JAMES MATTESON, PLAINTIFF, *v.* JOHN F. MOULTON, DEFENDANT.

*Acceptance of bills of exchange* — 1 *R. S.* (2d ed.), 757, § 11 — *failure to return bill.*

Section 11 of Revised Statutes (2d edition), 757, providing that " every person upon whom a bill of exchange is drawn, and to whom the same is delivered for acceptance, who shall destroy such bill or refuse within twenty-four hours after such delivery, or within such other period as the holder may allow, to return the bill accepted or non-accepted to the holder, shall be deemed to have accepted the same," applies only to cases in which the acts of the drawee are of a tortious character, and imply an unauthorized conversion of the bill by the drawee, and not to cases in which the bill is willingly left in the hands of the drawee by the holder, and no demand therefor is made.

MOTION for a new trial on a case and exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiff directed by the court.

*Henderson & Wentworth*, for the plaintiff.

*W. Woodbury*, for the defendant.

TALCOTT, J. :

This is a motion for a new trial on a verdict directed by the court at the Cattaraugus Circuit. Exceptions sent to the General Term in the first instance.

The action was upon an inland bill of exchange, drawn by one McDonald on the defendant for $526.76. The bill was never accepted by the defendant in writing, as required by the statute, which provides that no person within this State shall be charged as an acceptor on a bill of exchange unless his acceptance shall be in writing, signed by himself or his lawful agent (1 R. S. [2d ed.], 757, § 6); and unless he is made liable as an acceptor under the subsequent eleventh section, he is not liable upon the bill. The said section 11 is as follows : " Every person upon whom a bill of exchange is drawn, and to whom the same is delivered for acceptance, who shall destroy such bill, or refuse within twenty-four hours

after such delivery, or within such other period as the holder may allow, to return the bill accepted or non-accepted to the holder, shall be deemed to have accepted the same."

The bill was sent by a third party with directions to leave it at the office of the defendant, which was done, and, so far as appears, no demand of acceptance was ever made. The defendant did not destroy the bill, for he produced it on the trial. The defendant never refused to return the bill; in fact, he was not directly required to return it, and no direct demand of the bill was ever made upon him. Two days after the making of the bill and the delivery of it to his agent at his office, the plaintiff called at the office and ascertained that the bill had been left there, and was informed by the agent that they were hard up and would not pay that day, but received no promise that the bill should be paid at any future day. The plaintiff went away and left the bill unaccepted at the office of the defendant. Two or three days after this, the plaintiff met the defendant at the hotel, in the same place in which the office of the defendant, before spoken of, was located, and had a conversation with the defendant about the bill, informing the defendant that he (the plaintiff) had such a bill and that it was at defendant's office. The following conversation, as testified to by the plaintiff, then ensued between the parties: "I wanted to know whether he was going to pay it or not, and if not, I wanted the order; and he (the defendant) said he could not pay it then, but as soon as he had completed five miles of the railroad running into Jamestown he should have the money. I asked him how long that would be, and he said ten days or two weeks. I told him it was considerable of an amount, and I wanted to know whether I should get my pay on it or not. He said I would get my pay on it inside of two weeks. I told him I wanted my pay on the order, and he said I would get my pay on the order as soon as he completed five miles of the railroad. Buffalo city was going to pay him, and that he would get done inside of two weeks." This conversation occurred in June, and it does not appear that any thing else took place between the parties until the sixth day of October, when they again met, and the plaintiff asked the defendant about pay on the bill, and the defendant stated that "he had been disappointed about pay." The plaintiff also stated that the defendant had never returned the bill or offered to return it.

We do not think that the evidence established a refusal to return the bill, within the eleventh section of the statute above referred to. The refusal mentioned in the statute, as it seems to us, refers to something of a tortious character, implying an unauthorized conversion of the bill by the drawee. In this case it is obvious that the plaintiff willingly left the bill in the possession of the defendant, and in no way gave the defendant to understand that a redelivery of the bill was required, relying probably upon the expectation that it would be ultimately paid. The attempt to charge the defendant with the payment of the bill upon the ground of a promise is, as it appears to us, simply an attempt to charge the defendant with a liability on the bill upon a parol acceptance. If an action can be maintained under such circumstances, the provisions of section 6 of the statute before referred to would be rendered wholly nugatory.

Besides, as to the promise, there was no evidence to show that the five miles of railroad, on the completion of which the promise to pay the bill was conditioned, had been completed.

The defendant moved for a nonsuit on the ground, First. That there was no acceptance of the bill in writing. Second. That there was no demand of the bill before suit. Third. That there was no refusal to deliver the bill. Fourth. That the plaintiff had failed to make out a cause of action. The court held that the defendant was liable because he was indebted to McDonald, the drawer, because he had received and retained, and declined to return the bill, and had promised to pay it, to which ruling and to the refusal of a nonsuit the defendant excepted. We think the nonsuit should have been granted for the reasons stated by the defendant.

The evidence of the declarations of one Slocum to show that the defendant was in fact indebted to McDonald, the drawer of the draft, the admission of which was objected to, was inadmissible. It was mere hearsay of a party not, so far as appears, the agent of the defendant, for the purpose of making any such admission.

The verdict is set aside and a new trial ordered, costs to abide the event.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

New trial ordered, costs to abide the event.